UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

        - against -

MARK HENRY,

                Defendant.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**
13-CR-91 (RRM) (RML)

ROSLYNN R. MAUSKOPF, United States District Judge.

On February 13, 2013, defendant Mark Henry was indicted on charges that he

(1) conspired to violate the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778(b)(2), (c)

("Count One"); (2) violated the AECA by willfully and knowingly exporting, causing to be

exported, and attempting to export, from the United States to Taiwan, ablative materials listed on

the United States Munitions List ("USML"), 22 C.F.R. § 121.1, without first obtaining an export

license or other written authorization from the Department of State ("Count Two");[1] and

(3) violated the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705,

by willfully and knowingly attempting to export, from the United States to China, microwave

amplifiers on the Commerce Control List ("CCL"), 15 C.F.R. § 774, without first obtaining an

export license from the Department of Commerce ("Count Three").[2]  (Indictment.)  Currently

before the Court is the government's *in limine* motion, pursuant to Fed. R. Evid. 404(b), to admit

evidence concerning Henry's 2006 and 2007 shipment of hazardous materials in violation of the

---

[1] The indictment charges that these ablative materials are used for, among other things, a protective coating for
rocket nozzles.  (Indictment (Doc. No. 1) ¶ 11.)

[2] The government alleges that these microwave amplifiers are "dual use" items, with both military and commercial
applications.  (*See* Indictment ¶ 7; Gov't's Mem. of L. Supp. 404(b) Mot. ("Gov. Mem.") (Doc. No. 13)  at 4.)

Federal Aviation Administration's ("FAA") labeling requirements.[3] The motion is granted, as provided herein.

## BACKGROUND

### I.    The AECA Counts

In support of its motion, the government proffers the following with regard to the AECA Counts in the current indictment:

Henry operated an export business out of his Queens residence, using a number of company names, including DaHua Electronics Corporation and Bao An Corporation. In 2009, under the name Bao An Corporation, Henry purchased, from a Colorado company (the "CO Company"), twelve drums of ablative materials for export to a company in Taiwan (the "Taiwanese Company"). These ablative materials were on the USML and, therefore, required a license or other authorization from the State Department for export to Taiwan, among other places. The invoices from the CO Company warned that the product could not be sold outside of Canada and the United States without a license from the Department of Defense ("DOD").[4] In e-mails, Henry informed the Taiwanese Company that export required a license from DOD. Henry had the CO Company deliver the drums of ablative material to a freight forwarding company in Queens without disclosing that this freight forwarder would ship the drums to Taiwan.

Before Henry purchased and exported the ablative materials, he exchanged emails with the Taiwanese Company about needing an export license. The Taiwanese Company initially asked whether Henry needed to apply for the export license. Approximately one month before

---

[3] Although Henry was convicted, on May 1, 2008, of committing one such violation (on or about March 27, 2007), *see United States v. Henry*, 08 CR 165 (E.D.N.Y.) (Doc. Nos. 19, 30), the government "does not intend to offer the fact of Henry's criminal conviction, but rather only the underlying conduct." (Gov. Mem. at 9.)

[4] In fact, the State Department, and not the Department of Defense, issues the necessary license.

Henry exported the first shipment, the Taiwanese Company instructed, "if you still do not receive the export license from government early next week, please help ship them directly based on proper description to Taiwan directly, thank you!" The government alleges that by "proper description," Henry and the Taiwanese Company meant a description that would conceal the nature of the materials.

After the Taiwanese Company received the first shipment, which consisted of ten drums, it advised Henry that getting the drums released from customs had taken some time because the description of the material on the labels outside the drums did not match the description on the invoice. To avoid a similar delay with the remaining two drums, the Taiwanese Company asked Henry to remove the labels from those drums and send the labels separately via Federal Express.[5]

After the full shipment was complete, the Taiwanese Company expressed interest in buying more ablative material from Henry. Concerned about the difficulty it had encountered with the previous shipment, the Taiwanese Company sent Henry an e-mail stating, "We would like to know how to handle will be safer and less problems for both of us. Such as how many drums for each shipment is better? And the description like last shipment is fine for you?" In 2010, Henry purchased eight more drums of the ablative material from the CO Company for export to the Taiwanese Company. In 2011 and 2012, he and the Taiwanese Company continued to correspond about additional purchases. Neither Henry nor any of his companies ever applied for a license from the State Department to export the ablative materials.

## 2. The IEEPA Count

The government alleges as follows with regard to the pending IEEPA Count:

---

[5] When confirming to Henry the shipment of the twelve drums, the freight forwarder described the material as "Industrial Stataion [*sic*]."

In early 2012, Henry requested a price quote from a Pennsylvania company (the "PA Company") for two microwave amplifiers. These amplifiers were on the CCL and, therefore, required a license from the Department of Commerce for export to China, among other places. Neither Henry nor any of his companies had a license to export the amplifiers. Although Henry initially represented to the PA Company that he was purchasing the amplifiers for a customer in upstate New York, he submitted an end-user certificate identifying the end-user as an energy company in China (the "Chinese Company"). After the PA Company informed Henry that it could not offer a discount for exports to China, Henry submitted (1) a new end-user certificate representing that the amplifiers were destined for Columbia University in Manhattan; and (2) a signed advisement form acknowledging that the amplifiers required an export license for export to China, and that Henry was responsible for obtaining the license. After receiving these forms, the PA Company shipped the amplifiers to Henry, who then delivered them to Federal Express for shipment to the Chinese Company. Law enforcement intercepted and detained the amplifiers.

### 3. The Evidence the Government Seeks to Admit

On May 1, 2008, Henry pled guilty to shipping CONAP S-8 solvent, a hazardous material, without properly identifying its contents as hazardous, in violation of 49 U.S.C. §§ 5103 and 5124. *See United States v. Henry*, 08 CR 165 (E.D.N.Y.) (Doc. Nos. 19, 30.) During his allocution, Henry admitted that on or about March 27, 2007, he attempted to ship to Singapore four gallons of a hazardous material disguised in non-descript packaging, knowing that he was required to label the material as hazardous prior to shipping, in accordance with FAA regulations. *See id*. (Doc. No. 19 at 25–27).

In the instant motion, the government alleges that (1) the conduct underlying this offense occurred on three separate occasions, involving three separate shipments of CONAP S-8 solvent between June 2006 and March 2007; (2) the solvent was hazardous because it posed a risk of damage to the lungs, skin, and eyes; presented a cancer hazard; and could cause flash fires; (3) on each occasion, Henry concealed the solvent in non-descript outer packaging that obscured the contents' true nature; and indicated on paperwork associated with the shipments that the packages did not contain any hazardous material; (4) Henry was well aware of regulatory requirements for shipping such goods, having taken a hazardous materials ("HazMat") training course on January 30, 2006, and again in January 2007, which provided specific instruction on the requirements for shipping hazardous materials by air transport; and (5) the shipments were all intercepted prior to delivery to their intended recipients. (Gov. Mem. at 5.)

The government seeks to introduce this evidence during its case in chief, and argues that it is admissible pursuant to Fed. R. Evid. 404(b) to prove Henry's knowledge, intent, lack of mistake, motive, opportunity, capacity, skill, plan, preparation, and *modus operandi*. On May 9, 2014, the Court held a pre-trial conference concerning, *inter alia*, the instant motion. At the conference, both parties requested that the Court rule on this motion prior to trial.

## DISCUSSION

### I.     Standard of Review

Fed. R. Evid. 404(b) provides that evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith" but "may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). "Where a defendant claims that his conduct has an innocent explanation, prior act evidence is

generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993).

Under Rule 404(b), evidence of prior bad-acts evidence must be (1) offered for a proper purpose; (2) relevant to a disputed issue; (3) substantially more probative than prejudicial; and (4) at the defendant's request, subject to an appropriate limiting instruction to the jury. *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (citing *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)); *United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) (citing *Huddleston*, 485 U.S. at 691–92). "The Second Circuit evaluates Rule 404(b) evidence under an inclusionary approach and allows evidence for any purpose other than to show a defendant's criminal propensity." *United States* v. *Brand*, 467 F.3d 179, 196 (2d Cir. 2006) (internal quotation marks omitted). Accordingly, a court should admit evidence of other crimes, wrongs, or acts "unless [the evidence] is introduced for the sole purpose of showing defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996). "In the Rule 404(b) context, the court need only determine that a jury [could have] reasonably conclude[d] that the [other] act occurred and that the defendant was the actor." *United States v. Midyett*, 603 F. Supp. 2d 450, 454 (E.D.N.Y. 2009) (internal quotation marks omitted).

Relevant evidence includes "any 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Brand*, 467 F.3d at 197 (quoting Fed. R. Evid. 401). The evidence, therefore, must address an issue that is actually in dispute. *See United States v. Ivanova* ("If the defendant offers a statement to the court of sufficient clarity to indicate that the issue will not be disputed, then the Government cannot introduce prior act evidence on that

issue.") (internal quotation marks omitted); *McCallum*, 548 F.3d at 475–76 ("Because [defense] counsel did not make a statement to the court of sufficient clarity to indicate that intent and knowledge would not be disputed, those issues remained sufficiently in dispute for the similar acts evidence to be relevant and hence admissible.").

Further, the government must "identify a similarity or connection between the two acts that makes the prior act relevant." *McCallum*, 548 F.3d at 475 (internal quotation marks omitted) (citing *United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (holding that district court abused discretion by admitting proof of prior conviction because "the government did not establish that [the] prior drug conviction was meaningfully probative of [the defendant's] knowledge" with respect to the charged narcotics conspiracy, "[t]he only similarity between the two drug transactions . . . [was] that both involved cocaine," and "[t]he government did not offer evidence of any other similarity or connection between the two transactions")); *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (affirming conviction, where court instructed that jury could consider prior narcotics conviction to determine whether defendant knew cocaine was hidden in his closet, intended to exercise control over the cocaine, or intended to distribute the cocaine); *Brand*, 467 F.3d at 197 ("The government is required to establish only a similarity or some connection to establish that a prior act is relevant to one of the elements (in this case, intent) of the crime charged.") (internal quotation marks omitted). Finally, where the evidence at issue does not "involve conduct more inflammatory than the charged crime[s]," the court should not exclude it on grounds of unfair prejudice. *Paulino*, 445 F.3d at 223 (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)); *see* Fed. R. Evid. 403.

**II.    Analysis**

Here, the government makes two arguments concerning the purpose and relevance of the evidence at issue.  First, the government argues that the prior acts are directly relevant to Henry's knowledge, intent, and lack of mistake when he committed the instant offenses.  Specifically, the government argues, Henry's prior efforts to surreptitiously export restricted materials – by concealing them in non-descript packaging and failing to label or identify them as required – are relevant to show that when he committed the instant offenses, he knew that special requirements exist for shipping restricted materials and intended to evade those requirements.  Second, the government argues that Henry's method in committing the prior acts – utilizing his small business to obtain and furtively export restricted materials for profit, in the manner described above – is relevant to show his *modus operandi*, along with his motive, capacity, skill, and opportunity to commit the charged offenses.

Henry opposes the motion, arguing that the prior and currently-charged acts implicate regulatory regimes that differ in purpose, administration, and content.  (Def.'s Mem. of L. Opp'n 404(b) Mot. ("Def. Mem.") (Doc. No. 18) at 5.)   Specifically, he contends that the FAA's labeling regime for hazardous material shipments, which is not a licensing regime, exists to prevent injury or damage during shipment, whereas the State and Commerce Departments' licensing regimes for exporting military and dual-use items exist to protect foreign policy concerns.  (*Id*.)  Accordingly, he argues, knowledge of the FAA's regime for hazardous material shipments does not translate into knowledge of the governing regulations here.  Similarly, he argues that "there is no clear *modus operandi* present" because failing to label a hazardous material shipment differs from exporting USML or dual-use items without a license.  (*Id*. at 6.)

The Court agrees with the government that, at a minimum, the evidence is relevant to Henry's (1) knowledge that certain potentially dangerous goods are restricted and require special shipping and export procedures; (2) intent and lack of mistake in violating such requirements; and (3) *modus operandi* of using a small business to obtain and ship restricted goods, and shipping the goods furtively by placing them in non-descript packaging and making false statements on paperwork concerning the packages' contents. *See Paulino*, 445 F.3d at 223; *United States v. Carlton*, 543 F.3d 97, 101 (2d Cir. 2008) (finding that court properly admitted evidence of defendant's prior bank robbery convictions to show *modus operandi*). While Henry is correct that knowledge of the regulations for shipping hazardous materials does not necessarily "translate" into knowledge of the regulations for shipping USML and dual-use materials (Def. Mem. at 6), the operative question here is merely whether his knowledge of the former has "any tendency" to make his knowledge of the latter "more probable or less probable than it would be without the evidence.'" *Brand*, 467 F.3d at 197 (quoting Fed. R. Evid. 401). The evidence meets this inclusive standard. *See also id*. at 196 (noting Second Circuit's "inclusionary approach" to 404(b) evidence).

Further, the similarity of the prior and currently-alleged acts is apparent – they all involve Henry's "idiosyncratic" method of using a small business to export restricted goods in a manner that violates special shipping requirements and, to further the violations, concealing the materials in non-descript packaging and making false statements on paperwork. *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984) ("The similarity sufficient to admit evidence of past acts to establish a recurring *modus operandi* need not be complete; it is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence.").

While Henry notes that the prior and currently-charged offenses are not identical, he fails entirely to address the similarities in his alleged method of committing them.

The evidence is also relevant because it addresses an issue actually in dispute – namely, Henry's state of mind in committing the charged offenses. Henry's opposition brief, along with his counsel's statements at the May 9, 2014 pre-trial conference, reflect that he intends to dispute the government's allegation that he acted willfully and knowingly in committing the charged offenses. For example, Henry argues that his exporting business was "entirely legitimate but for the single instances of the prior conduct and the unlawful conduct currently alleged." (Def. Mem. at 7.) In support of this argument, Henry cites, as "prime examples of his desire to engage in legitimate business practices," his "repeated disclosures to U.S. distributors" and the shipping declaration he made "for the amplifiers." (*Id*.) Stating his position even more directly, Henry argues that his exporting practices are "directly contra to any unlawful motive, capacity, skill or opportunity to violate the law." (*Id*.) Because Henry flatly disputes the government's position concerning his state of mind, the evidence is relevant to a contested issue. *See McCallum*, 584 F.3d at 475–76.[6]

Further, the probative value of the evidence substantially outweighs its prejudicial effect. In fact, the prior acts are arguably less inflammatory than the currently charged acts. While both sets of acts involve dangerous materials, the materials in the instant case have military applications and therefore pose an even greater potential threat. *See Paulino*, 445 F.3d at 223; *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (holding that prior act evidence was not unduly prejudicial because, in part, it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged"). Moreover,

---

[6] Because these contrary positions are "apparent from the outset of the trial," there is "no need" to await the defense case before ruling on the instant motion. *Zackson*, 12 F.3d at 1183.

the government indicates that it "does not intend to offer the fact of Henry's criminal conviction, but rather only the underlying conduct." (Gov. Mem. at 9.) Finally, the Court will further limit any prejudicial effect by instructing the jurors that they may consider the evidence at issue solely for purposes Rule 404(b) permits, and not for Henry's criminal propensity or bad character. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) ("[W]e find no undue prejudice under Rule 403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction.").

For the foregoing reasons, the government's motion is granted, and the government may introduce the evidence during its case in chief as described herein.

## CONCLUSION

The government's motion *in limine* is granted, consistent with this opinion.

SO ORDERED.

Dated: Brooklyn, New York           *Roslynn R. Mauskopf*
      May 30, 2014           _____
                                   ROSLYNN R. MAUSKOPF
                                   United States District Judge