UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

    - v. -

MARK HENRY,
   also known as "Weida Zheng,"
   "Scott Russel,"
   "Bob Wilson," and
   "Joanna Zhong,"

                Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
13-CR-91 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Before the court is defendant Mark Henry's application for bail pending appeal. (Doc. No. 97.) For the reasons that follow, the application is DENIED.

      Henry shall surrender to the United States Marshal for the Eastern District of New York no later than 12:00 noon on January 5, 2016 as ordered by this court at Henry's sentencing, and as reflected in the Judgment of Conviction entered November 24, 2015 (Doc. No. 94).

      Counsel for defendant Henry, Mr. Paul Goldberger, shall immediately advise Henry of this court's order, including the order requiring Henry to surrender no later than 12:00 noon on January 5, 2016, and Mr. Goldberger shall file a letter with the court no later than 10:00 a.m. on January 4, 2016 advising that he has so notified the defendant.

**I. Background**

      Familiarity with the facts and circumstances of this case, including those presented at trial and at the sentencing proceedings, is presumed. On July 2, 2015, Henry was convicted after a jury trial of violating the Arms Export Control Act ("AECA"), Title 22, United States Code,

1

Section 2778, and conspiring to violate AECA, Title 18, United States Code, Section 371.[1] The charges stemmed from Henry's efforts between 2009 and 2012 to unlawfully export from the United States to Taiwan ablative materials categorized as "significant military equipment" on the United States Munitions List, which ablative materials are used for, among other things, protective coating for rocket nozzles.

Henry was sentenced on November 19, 2015, principally to concurrent terms of imprisonment of 78 months on the conspiracy count and 60 months on the substantive count, a sentence below the applicable Advisory Sentencing Guideline range calculated by the court at sentencing. The court granted Henry's request to remain at liberty following sentencing to accord Henry time to make arrangements for the care of Henry's elderly parents with whom Henry resides. The court ordered Henry to surrender to the United States Marshal for the Eastern District of New York no later than 12:00 noon on Tuesday, January 5, 2016.

On December 30, 2015, Henry filed his motion for bail pending appeal. The government opposed the application in a letter filed on December 31, 2015. (Doc. No. 98.) As discussed more fully below, Henry has failed to demonstrate that he is entitled to bail pending appeal.

## II. **Bail Pending Appeal**

The standards governing release pending appeal are set forth in 18 U.S.C. § 3143(b), which provides in relevant part:

> (1) … [A] judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title [18 USCS § 3142(b) or (c)]; and

---

[1] Henry was acquitted on one count charging an attempt to violate the International Emergency Economic Powers Act related to his efforts to attempt to export microwave amplifiers – dual use components with electronic warfare applications – from the United States to China without proper authorization.

> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

In determining whether a defendant poses a risk of flight, the statute imports the traditional factors under Section 3142 for release or detention pending trial. In determining whether an appeal raises a "substantial question of law or fact," a court must find that the issue is "a close question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985), *cert. denied*, 474 U.S. 1008 (1985) (quotation and citation omitted). "If a court does find that a question raised on appeal is 'substantia,' it must then consider whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *Id*. at 125 (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)).

Thus, as here, following a guilty verdict and a sentence of imprisonment, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 310 (2d Cir. 2004). It is the defendant's burden to "rebut that presumption with clear and convincing evidence." *Id*.; *see also* Fed. R. Crim. P. 46(c) (("The provision of 18 U.S.C. § 3143 govern release pending sentencing or appeal" and "[t]he burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.")

### III. Henry's Motion

Henry argues that he is entitled to bail pending appeal because 1) he does not pose a risk of flight nor is he a danger to the community; and 2) his claims regarding prosecutorial

misconduct during summation and the unreasonableness of his sentence raise substantial questions requiring reversal. Henry's arguments fail on all fronts.

### A. Risk of Flight/Danger to the Community

As he correctly notes, during the pendency of his case, Henry appeared in court when required and complied with the terms of his pre-trial release. He now claims that this history, together with the need for him to tend to his elderly parents, provide clear and convincing evidence that he is not a flight risk. However, at this juncture, there are ample grounds for this court to find that Henry poses a serious risk of flight, and as such, Henry has failed to demonstrate by clear and convincing evidence that he is neither a flight risk nor a danger to the community.

First, Henry has significant ties overseas. As demonstrated at trial, Henry does the bulk of his business overseas, and has myriad business contacts in both Taiwan and China, as well as in other countries in the Far East. And though a naturalized United States citizen, Henry was born in China, and was schooled, worked and married (twice) in Japan. He also has strong family ties abroad, with two sisters in Tokyo and a brother in Shanghai, all of whom work and all of whom are close to defendant. (Pre-Sentence Report ("PSR") at ¶ 57.) Both defendant and his siblings appear, at a minimum, to have access to sufficient assets to facilitate the defendant's travel and/or relocation abroad.[2]

Equally important, as the trial evidence plainly established, Henry has successfully used deception to carry out his crimes. He has used no less than four individual aliases as part of his scheme, and was masterful in hiding his activities behind a web of corporate identities, internet communications, and false and fraudulent statements. In addition, Henry's own testimony both

---

[2] It should also be noted that Henry has been represented by retained counsel throughout these proceedings, and claims to support his parents, despite claiming to have suffered a net loss in his business in 2013, the last year for which he reported information about his finances. (PSR ¶ 69.)

at trial and at a suppression hearing was replete with materially false statements that were clearly contradicted by other credible testimony and documentary evidence, and for which the court imposed an obstruction enhancement pursuant to USSG § 3C1.1. (*See* Gov't Ltr., 8/1/15, Doc. No. 87; Def. Ltr., 8/6/15, Doc. No. 88.) Moreover, this is not Henry's first brush with the law, or with criminal violations related to the export of sensitive items. Henry was convicted in this court in December 2008 of attempting to ship hazardous materials to Singapore by hiding the true nature of the packages with false shipping labels. (*See* 08-CR-165 *United States v. Henry* (Weinstein, J.); PSR ¶¶ 50-51). Indeed, Henry committed the instant offense while on probation for this prior conviction. Thus, Henry has demonstrated his complete lack of trustworthiness – time and again, and in multiple ways – by failing to abide by the law, to follow the terms and conditions of his probation, to testify truthfully, and to hold himself out in business with honesty and integrity.

Finally, Henry has now learned his sentence, and faces the prospect of more than six years in custody. Both his post-trial motion to set aside the verdict and his efforts to mitigate his sentence with claims of diminished capacity – even with the benefit of new and very capable counsel – have been soundly rejected. With these avenues now closed, and only an appeal as his last – and, perhaps, dim – hope, Henry has powerful incentive to flee, more so at this juncture than at any other time during the pendency of his case.

Perhaps trying one last time to avoid the consequences of his criminal activity, Henry has filed this motion on the eve of his surrender date, claiming in the most cursory and conclusory of ways that he needs more time to make arrangements for his elderly parents. But he has known about this day since his sentencing in November, and he has failed to set forth one word about the efforts, if any, he has made to date to ensure that his parents will be able to get by in his

5

absence, either with outside help or with the help of his siblings or other family members.[3]

Henry argues that he "is not likely to flee, because he has an obligation to take care of his elderly parents." (Def. Mot., Doc. No. 97, at 4-5 (ECF Pagination)). This, however, hardly outweighs the many factors that make Henry a significant flight risk at this juncture. In light of these reasons, Henry has failed to demonstrate by clear and convincing evidence that he is not likely to flee. As such, his motion fails on this ground alone.

### B. Substantial Question of Law or Fact

Nor has Henry demonstrated "a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). In the instant motion, Henry makes only cursory mention of the arguments he has previously advanced and which the court has soundly rejected. He does not provide any additional facts or cite any additional or intervening legal authority to suggest that he will prevail on appeal. Indeed, the instant motion is wholly devoid of *any* legal authority.

He claims, as he did in his Rule 33 motion, that he is entitled to have his conviction reversed because of prosecutorial misconduct in summation. However, this court carefully considered this issue in its Memorandum and Order dated February 27, 2015 (Doc. No. 77), and the court incorporates by reference here the analysis and conclusions of that Memorandum and

---

[3] The court notes that while Henry's parents are elderly and appear to suffer from various medical ailments, both came to court regularly to watch the trial, sentencing and other proceedings, and his father testified on Henry's behalf and withstood vigorous cross-examination. Neither parent appeared to have significant difficulty with any aspect of their many court visits, even taking in to account the need for Henry's father to use a walker and, at times, a portable oxygen tank. Moreover, the PSR indicates that the parents receive the help of a home attendant. PSR ¶ 56.

Order. The court rejected Henry's claim, and Henry has provided no basis in law or fact to suggest that his claim will fare any better on appeal.

"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Elias,* 285 F.3d 183, 190 (2d Cir. 2002) (citation and internal quotation omitted). To warrant reversal, the defendant must show that the misconduct was "so severe and significant as to result in the denial of [his] right to a fair trial." *United States v. Loscascio*, 6 F.3d 924, 945 (2d Cir. 1993). The remarks must "so infect the trial with unfairness as to make the resulting conviction a denial of due process," *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002), and prosecutorial comments will not amount to a denial of due process unless they cause the defendant "substantial prejudice," and therefore constitute "egregious misconduct." *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (citation and internal quotation omitted). To evaluate whether prosecutorial misconduct resulted in a denial of due process, the Court considers "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *Shareef*, 190 F.3d at 78.

As the court previously held, the prosecutor's remarks here

> fell far short of the demanding standard described above, and did not require any curative measures. By testifying in his own defense, Henry injected his credibility directly into the trial, and thereby made his truthfulness a central question for the jury. The government had no choice but to address his testimony, and, accordingly, his credibility. Further, the manner in which it did so was proper. Many of the allegedly objectionable comments were characterizations of Henry's disputed testimony, while others were made to highlight documentary evidence that contradicted Henry's explanations. The comments were not made carelessly or haphazardly, and they did not unnecessarily attack Henry personally. Despite their repetitive nature, the comments did not stray outside the "broad leeway" granted to prosecutors during summation. *United States v. Edwards*, 342 F.3d 168, 181 (2d Cir. 2003).

Henry has advanced no argument to call in to question the court's analysis, or to suggest that the court's ruling should be disturbed. As such, Henry has not raised a substantial question of law or fact as required pursuant to Section 3143(b)(1)(B).

Henry also claims that his sentence is unreasonable for two reasons. First he claims that he "was sentenced in a manner in which an unreasonable disparity in sentences was created for similar crimes." (Def. Mot at 5.) That is the sum total of his argument on this point; he does not specify the basis for this unwarranted disparity. Presumably, Henry is referring to the sentences meted out in the cases listed his sentencing memorandum. (Doc. No. 80 at 3-6.) However, as the sentencing minutes will reflect, the court carefully considered these cases to avoid unwarranted disparities, and found those cases inapposite as key factors in the comparison Henry sought to draw – for example, criminal history, guideline level, whether the defendant(s) in those cases cooperated, among others – were either unknown, or substantially different from Henry's circumstances.

Second, Henry claims that his sentence was unreasonable because "he was denied a departure pursuant to USSG §5K2.13." (Def. Mot. at 5.) Again, he cites no law, but adds only one sentence in support, asserting that he "submitted uncontroverted evidence from a forensic psychologist that Mr. Henry suffers from diminished capacity." (*Id*. at 5-6.) This claim also fails to raise a substantial question on appeal as Henry – now, and at sentencing – misconstrues the requisites of this departure.

Section 5K2.13 provides that a downward departure may be warranted if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." The application notes define "significantly reduced mental capacity" as a

defendant who, though convicted, "has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13 cmt. n.1. To qualify for the departure, the defendant must demonstrate both that he suffered from a "significantly reduced mental capacity" *and* that there is a "causal link between that reduced capacity and the commission of the charged offense." *United States v. Kim*, 313 F. Supp.2d 295, 298 (S.D.N.Y. 2004).

Once again, as the record at sentencing reflects, the court carefully considered this issue and rejected Henry's arguments.[4] Henry – and his expert, Dr. Janoson – provided no evidence that Henry suffered from a "significantly reduced mental capacity" during the commission of the offense *or* that there was any causal link between any mental health issue and Henry's offense conduct. The thrust of Dr. Janoson's conclusions focused on Henry's mental health issues *at the time of sentencing* and drew no link between any reduced mental capacity and the commission of the charged offense. In the instant motion, Henry has not put forth any new information or law, nor has he even articulated why the court's decision not to impose a departure warrants relief on appeal. Moreover, and critical here, Henry ignores the fact that at sentencing, this court made clear that the sentence imposed would be the same even accepting that the findings of the expert would give rise to grounds for departure. This court presided over the trial, and as the court found at sentencing, Henry engaged in his criminal scheme knowingly, with a full understanding of what he was doing, and with clear intent to violate the law.

---

[4] In fact, it was not until three days before sentencing that Henry raised for the first time any mental health issue. (*See* Ltr. from Paul Goldberger dated June 15, 2015, Doc. No. 82.) Until this filing, neither Henry's sentencing memoranda, nor the PSR, mentioned such any issue. Once the issue was raised, the court adjourned the sentencing for five months to allow Henry and the government to file supplemental submissions, and to allow the government's own doctor to conduct an examination of defendant. (*See* Doc. Nos. 85, 86, 90, and 92.)

9

Based on the record at sentencing, this court committed neither procedural error, see *United States v. Cavera*, 550 F.3d 180, 189 (2d. Cir. 2008) (en banc), nor error in the application of a particular guideline, see *United States v. Gonzalez*, 647 F.3d 41, 62 (2d Cir. 2011). As such, Henry has failed to raise a substantial question of law or fact with regard to his sentencing.

**IV. Conclusion**

For the reasons stated herein, Henry's motion for bail pending appeal is DENIED. Henry shall surrender to the United States Marshal for the Eastern District of New York no later than 12:00 noon on January 5, 2016 as ordered by this court at Henry's sentencing, and as reflected in the Judgment of Conviction entered November 24, 2015 (Doc. No. 94).

Counsel for defendant Henry, Mr. Paul Goldberger, shall immediately advise Henry of this court's order, including the order requiring Henry to surrender no later than 12:00 noon on January 5, 2016, and Mr. Goldberger shall file a letter with the court no later than 10:00 a.m. on January 4, 2016 advising that he has so notified the defendant.

SO ORDERED.

Dated: Brooklyn, New York
      January 2, 2016

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge