UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,

- against -

MARK HENRY,

              Defendant.
----------------------------------------------------------x

**MEMORANDUM &
ORDER**
13-CR-91 (RRM)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      On March 10, 2020, defendant Mark Henry filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) in order to care for his elderly parents. (Motion to Reduce Sentence (Doc. No. 114).) On April 8, 2020, Henry filed a second *pro se* motion to reduce his sentence pursuant 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. (Second Motion to Reduce Sentence (Doc. No. 115).) For the reasons set forth below, Henry's motions to reduce his sentence are denied.

## BACKGROUND

### I. Charges, Conviction, and Sentencing

      Familiarity with the facts and procedural history of this case is presumed. On July 2, 2015, Henry was convicted after a jury trial of violating the Arms Export Control Act ("AECA"), Title 22, United States Code, Section 2778, and conspiring to violate AECA, Title 18, United States Code, Section 371.[1] The charges stemmed from Henry's efforts between 2009 and 2012 to unlawfully export from the United States to Taiwan ablative materials categorized as "significant military equipment" on the United States Munitions List. The ablative materials Henry sought to export are used for, among other things, protective coating for rocket nozzles.

---

[1] Henry was acquitted on one count charging an attempt to violate the International Emergency Economic Powers Act related to his efforts to attempt to export microwave amplifiers – dual use components with electronic warfare applications – from the United States to China without proper authorization.

The Court sentenced Henry principally to a term of imprisonment of 78 months. The Court adopted the PSR's Guidelines calculation, including the application of a 2-level enhancement for obstruction of justice based on Henry's perjury. (PSR.) Henry's criminal history category was Category II based on his prior conviction for failing to label hazardous materials. (*Id.*) Henry moved for bail pending appeal, citing his elderly parents' need for his care in support of the motion. (Bail Pending Appeal App. (Doc. No. 97).) The Court denied Henry's motion. (Doc. No. 99.) Henry appealed and the Second Circuit affirmed the convictions and sentence. *United States v. Henry*, 888 F.3d 589 (2d Cir. 2018). Henry's petition for certiorari to the Supreme Court was denied. 139 S.Ct. 2615 (2019). Henry is currently incarcerated at FCI Schuylkill in Pennsylvania. His projected release date is July 18, 2021.

## II.     The Instant Motions

On March 10, 2020, Henry filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) citing principally his need to care for his elderly parents. (Motion to Reduce Sentence ("Mot.") (Doc. No. 114).) Henry's submission indicates that the Bureau of Prisons ("BOP") denied his February 10, 2020, request for compassionate release. (Mot. at 6.)[2] Henry explained to the BOP that "[s]ince moving to the United States in 1999, my primary responsibility has been taking care of my elderly, sick parents." (*Id.* at 7.) Henry asserts that his 88-year-old mother suffers from dementia and is legally blind, among other things, and his 87-year-old father previously had stomach cancer, which required removal of a portion of his stomach, and continues to suffer from obstructive pulmonary disease and pulmonary hypertension, among other things. (*Id.* at 8–12.) A home health aide spends about four hours per day caring for his parents. (*Id.*) Henry represented to the BOP that he plans to work full time as a server in a Chinese restaurant, join a health club, attend synagogue, and volunteer as a

---

[2] Page numbers for all documents refer to pagination assigned by the Court's Electronic Case Filing system.

prison advocate. (*Id.* at 12–13.) Henry anticipates continued reliance on a home health aide to care for his parents. (*Id.* at 13.) Henry maintains that he has a low recidivism risk due to his prison record, the classes he took while incarcerated, and his conversion to Judaism. (*Id.* at 13–14.)

The BOP denied Henry's request on February 25, 2020, because Henry is not the only available caregiver and because the circumstances Henry relied upon in his application were reasonably foreseeable by the Court at the time of sentencing because Henry's PSR indicates his parents' "significant history of medical problems." (*Id.* at 6.) The BOP concluded that under its policy guidelines, Henry is not eligible for compassionate release or a reduction in sentence. (*Id.*)

On April 7, 2020, Henry filed a second *pro se* motion to reduce his sentence pursuant 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. (Second Motion to Reduce Sentence ("Mot. II") (Doc. No. 115).) Henry asserts that his health puts him at risk of "grave health consequences or death" from exposure to COVID-19. (*Id.* at 2.) Specifically, Henry points to his heart disease, delusional disorder, major depressive disorder, and high blood pressure as conditions that put him at "very highest risk." (*Id.* at 3.) Henry asserts that his conditions of incarceration do not allow for social distancing and the "BOP confirmed that 19 federal inmates and 19 federal prison staffers have tested positive for COVID-19." (*Id.* at 4–6.) Henry states that he submitted a request to the warden of FCI Schuylkill but BOP has not yet ruled on the request and 30 days have yet to pass. (*Id.* at 7.) Nevertheless, Henry asserts that the Court should consider his request because "of the time sensitive nature of this application." (*Id.*)

On April 20, 2020, the attorney who represented Henry filed a motion for appointment to represent Henry in his request for compassionate release. (Motion to Appoint Counsel (Doc. No. 116).) The Court granted the request. (Order of May 6, 2020.)

On April 23, 2020, the government filed its opposition to Henry's request arguing that Henry has not demonstrated extraordinary and compelling reasons to reduce his sentence and the requested reduction would be inconsistent with the sentencing factors. (Government Opposition ("Opp.") (Doc. No. 117).) On May 8, 2020, Henry, represented by counsel, filed his reply. (Reply (Doc. No. 120).) On May 21, 2020, Henry's counsel filed a supplemental reply. (Supplemental Reply (Doc. No. 124).)

## DISCUSSION

### I. Applicable Law

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Henry must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence.

Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release. This policy statement, which has not been amended since the passage of the First Step Act, states, in relevant part:

4

> Upon motion of the Director of the [BOP] under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction;
> . . .
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement.

§ 1B1.13.

The Application Notes to section 1B1.13 provide that extraordinary and compelling reasons exist in the following situations:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Application Notes to § 1B1.13 cmt. n.1.

## II.  Henry's Motions

No extraordinary or compelling circumstances exist to warrant Henry's compassionate release. Henry's purported rehabilitation in prison does not qualify as an extraordinary and compelling reason under the Guidelines. Application Note 3 to § 1B1.13 expressly states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13, app. n.3; *see also United States v. Lisi*, No. 15-CR-457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020), *reconsideration denied*, No. 15-CR-457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020). Henry's rehabilitation argument is undermined by the fact that Henry has never accepted responsibility for his offense and has continued to challenge aspects of his criminal case even after his post-trial motions and appellate arguments were roundly rejected.

Henry is not entitled to compassionate release to care for his elderly parents. The Guidelines policy provides for release based on family circumstances related to the provision of care for a defendant's minor child or spouse or partner. U.S.S.G. § 1B1.13, app. n.1(C). Care of parents is not a qualifying basis for release. As the government notes, the only remaining avenue for release based on family circumstances would be under "other reasons" "[a]s determined by the Director of the [BOP]." U.S.S.G. § 1B1.13, app. n.1(D). Here, the BOP has already denied Henry's request for release. Even if the Court were to consider Henry's care for his parents as a family circumstance, Henry is not the only available caregiver – a home health aide provides daily care for Henry's parents. Thus, Henry's circumstances are markedly different from those

6

in *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019), on which Henry relies. In *Bucci*, the defendant was the only caregiver for her parents.

Henry's medical conditions do not entitle him to compassionate release.[3] Many courts have based their resolution of compassionate release requests in the COVID-19 era on whether the inmate-movant had underlying medical conditions that placed her or him at risk of developing a severe case of the illness. *See, e.g.*, *United States v. Logan*, No. 12-CR-307, Dkt. No. 140, at 10 (N.D.N.Y. April 22, 2020) (Kahn, J.) (determining that the confluence of the COVID-19 pandemic and the defendant's medical conditions, including "diabetes, hypertension, hypercholesterolemia, and coronary artery disease," justified release); *United States v. Colvin*, No. 19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (diabetes and high blood pressure). In making such a determination, numerous courts have looked to guidelines issued by the Centers for Disease Control and Prevention ("CDC") as to what conditions place an individual "at higher risk for severe illness." *See, e.g.*, *United States v. Zukerman*, No. 16-CR-194, 2020 WL 1659880, at *3–4 (S.D.N.Y. Apr. 3, 2020) (granting release where defendant was elderly, obese, diabetic, and had high blood pressure, all risk factors identified by the CDC); *United States v. Park*, No. 16-CR-473, 2020 WL 1970603, at *1 (S.D.N.Y. Apr. 24, 2020) (granting release where defendant had CDC-identified risk factors, including asthma and a compromised immune system).

Henry is 56 years old, and asserts that he suffers from a number of medical conditions. However, the only condition supported by his BOP medical records is hypertension which can put Henry at risk of "increased illness severity and adverse outcomes" with respect to COVID-

---

[3] Because the Court finds that Henry's claim fails on the merits, it need not address whether to excuse Henry's failure to exhaust his administrative remedies. *United States v. Zehner*, No. 19-CR-485, 2020 WL 1892188, at *2 (S.D.N.Y. Apr. 15, 2020) ("The Court need not reach the question of whether Defendant's failure to complete administrative exhaustion bars his application [for compassionate release], because the request for release can be denied on the merits.").

19. Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed May 19, 2020). Henry adds a generalized argument that the ongoing pandemic presents a particular risk to inmates, and specifically points to his inability to maintain social distancing at FCI Schuylkill in Pennsylvania where he is currently detained. However, unlike other facilities with significant numbers of inmates and staff who have tested positive for COVID-19, FCI Schuylkill Pennsylvania has had at most one single positive inmates or staff. (Supplemental Reply.) Henry proposes instead to live with his parents, who are both at extraordinarily high risk of serious COVID-19 symptoms, in Queens, New York, which currently has nearly 60,000 confirmed COVID-19 cases and over 4,700 COVID-19 deaths. *See* Johns Hopkins Coronavirus Resource Center, https://coronavirus.jhu.edu/us-map (last access May 19, 2020). Notwithstanding the extraordinary scope and severity of the COVID-19 health crisis, Henry, who is less than 65 years old and in generally good health, has not demonstrated that extraordinary and compelling circumstances warrant a reduction of his sentence. *See United States v. Zehner*, No. 19-CR-485 (AT), 2020 WL 1892188, at *2 (S.D.N.Y. Apr. 15, 2020) (denying COVID-19-related request for compassionate release by defendant who was incarcerated at MDC where defendant had overall good heath despite suffering from high blood pressure).

      A sentence reduction is also inconsistent with the sentencing factors under 18 U.S.C. § 3553(a). The government in its opposition to the motion sets forth in accurate detail the evidence adduced at trial with respect to Henry's serious criminal conduct. His crimes affected national security and related to the export of sensitive military equipment. Henry has never accepted responsibility for his crimes and at trial, attempted to shift responsibility for his offense conduct to his elderly and infirm father. He continues to deny responsibility, arguing that

language played a role in his inability to participate in his trial. Finally, the need for a sentence that reflects the seriousness of his offenses, promotes respect for the law, affords adequate deterrence to Henry, and protects the public from Henry's further crimes are all factors that remain as true today as they were when Henry's sentence was imposed.

## CONCLUSION

For all of the reasons set forth above, Henry's motions are denied.

SO ORDERED.

Dated: Brooklyn, New York
       July 6, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge